IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LEOLA SIMMONS BYRD, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO.: 4:17-CV-993 |
| § | |
| NANCY A. BERRYHILL, § | |
| COMMISSIONER OF THE § | |
| SOCIAL SECURITY ADMINISTRATION, § | |
| § | |
| *Defendant*. § | |

## **MEMORANDUM AND ORDER**

Plaintiff Leola Simmons Byrd filed this case under the Social Security Act, 42 U.S.C. §§ 405(g) for review of the Commissioner's final decision denying her request for social security disability insurance and supplemental security income benefits. Byrd and the Commissioner moved for summary judgment (Dkts. 14, 17), and the Commissioner responded (Dkt. 18). The court denies Byrd's motion, grants the Commissioner's motion, and affirms the final decision of the Commissioner.[1]

### **I. Background**

**1. Factual and Administrative History**

Byrd filed a claim for social security disability insurance and supplemental security income benefits on June 27, 2014. Byrd alleged the onset disability as of April 29, 2014 due to high blood pressure, diabetes, neuropathy, depression and pinched nerves. Dkt. 13-7 at 13. At the time of onset, Byrd was 53 years old with a high school education and past relevant work as a corrections officer. Her claim was denied on initial review and reconsideration. Byrd and a

---

[1] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including entry of final judgment. Dkt. 19.

vocational expert testified at a hearing on October 16, 2015. The administrative law judge (ALJ) issued an unfavorable decision on December 8, 2015. The Appeals Council denied review on January 23, 2017, and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2).

2. **Standard for District Court Review of the Commissioner's Decision**

Section 405(g) of the Act governs the standard of review in social security disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law,[2] "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id.*. The courts strive for judicial review that is

---
[2] Conclusions of law are reviewed *de novo*. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

"deferential without being so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

The court weighs four types of evidence in the record when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir.1991); *Hamilton-Provost v. Colvin*, 605 Fed. App'x 233, 236 (5th Cir. 2015).

### 3. Disability Determination Standards

The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. § 423(d)(1)(A)). A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." Work is "substantial" if it involves doing significant physical or mental activities, and "gainful" if it is the kind of work usually done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972; *Copeland v. Colvin*, 771 F.3d 920, 924 (5th Cir. 2014).

In the second step, the ALJ must determine whether the claimant has a severe impairment. Under applicable regulations, an impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.20(c). The Fifth Circuit construes these regulations as setting forth the following standard: "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

If the claimant is found to have a severe impairment, the ALJ proceeds to the third step of the sequential analysis: whether the severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets one of the listings in Appendix 1, the claimant is disabled. If the ALJ finds that the claimant's symptoms do not meet any listed impairment, the sequential analysis continues to the fourth step.

In step four, the ALJ must decide whether the claimant can still perform his past relevant work by determining the claimant's "residual functional capacity" (RFC). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. 404.1545). The ALJ must base the RFC determination on the record as a whole and must consider all of a claimant's impairments, including those that are not severe. *Id.*; 20 C.F.R. §§ 404.1520(e) and 404.1545; s*ee also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove she is not currently working and is no longer capable of performing her past relevant work. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). If the claimant meets her burden, the burden shifts to the commissioner at step five to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id*. Thus, in order for the Commissioner to find in step five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national economy, and that the claimant can do that work given her RFC, age, education, and work experience. *Fraga v. Brown*, 810 F.2d 1296, 1304 (5th Cir. 1998).

**4. The ALJ's Decision**

The ALJ performed the standard 5-step sequential analysis. The ALJ found that Byrd met the insured status requirements of the Social Security Act through December 31, 2018 and had not engaged in substantial gainful activity since her alleged onset of disability on April 29, 2014. The ALJ found that Byrd had the severe impairments of essential hypertension and diabetes mellitus, neither of which met or equaled the severity of a listed impairment.

The ALJ further found that Byrd had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c), except that she "is limited to occasionally climbing ramps and stairs; never climbing ropes, ladders, or scaffolds; and occasionally reaching overhead bilaterally." Dkt. 8-3 at 19. Based on the testimony of a vocational expert, the ALJ found Byrd could perform her past relevant work as a corrections officer. Alternatively, the ALJ found Byrd is capable of performing other jobs existing in the national economy.

## II. Analysis

Byrd asserts that the ALJ erred in making her RFC determination by (A) failing to take into account the non-exertional limitation that Byrd uses a cane to ambulate, and the inherent limitations on reaching, handling and fingering ability associated with cane use; and (B) by failing to take into account her stellar work history in making a credibility determination.

1. **The ALJ's RFC Assessment**

   **1.A. Limitations due to use of cane.**

   The ALJ did not include any limitations related to Byrd's use of a cane in her RFC finding. The ALJ mentioned the use of a cane only twice, first when acknowledging Byrd's testimony at the hearing that "she stopped performing household chores in April 2014;" and second when summarizing a June 2015 treatment note from the E.A. Squatty Lyons Health Center showing her "to have an essentially negative review of systems appearing on alert and in no apparent distress, using a cane for ambulation, but having no other positive findings." Dkt. 8-3 at 20, 21.

   There is no doubt that the record supports a finding that Byrd uses a cane to ambulate. In addition to her hearing testimony, Byrd also reported her use of a cane in her function report submitted with her application. Dkt. 8-7 at 34, 55. However, there is no objective medical evidence supporting a finding that her cane is medically necessary as is required to support a finding that her use of cane impacts her ability to work. *See* SSR 96-9P, 1996 WL 374185, *7. The medical records Byrd cites, Dkt. 15 at 7, note her self-reports of using a cane but not a physician's assessment of the need for one. Byrd represents that the cane was prescribed by a doctor, *Id.*; Dkt. 8-3 at 51-52, but this is not supported by any medical record. *See Donner v.*

*Barnhart*, 285 F. Supp. 2d 800, 814 (S.D. Tex. 2002) (substantial evidence supported ALJ's finding when claimant could not show her use of a back brace was prescribed by a doctor). The ALJ found that Byrd's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely credible. Dkt. 8-3 at 23. Presumably, one of Byrd's statements the ALJ did not find credible was that she was prescribed a cane which she was required to use at all times. The ALJ's decision implies a finding that the use of a cane was a self-imposed limitation. The court concludes that the ALJ did not err in declining to include limitations related to her use of a cane in her RFC assessment.

Alternatively, the ALJ's error, if any, was harmless. The record clearly shows that had the ALJ included limitations for the use of cane in her RFC assessment, the result would be the same. The ALJ asked the vocational expert if there were jobs in the national economy that a hypothetical claimant of Byrd's age and education limited to light jobs with transferable skills but requiring a cane to ambulate could perform. The ALJ also asked the vocational expert if there were jobs in the national economy that a hypothetical claimant of Byrd's age and education limited to unskilled light jobs with simple routine, routine, repetitive work but requiring a cane to ambulate could perform. The vocational expert answered both questions affirmatively, and identified the jobs of ticket seller, office helper, and parking lot cashier. Dkt. 8-3 at 55-58. Therefore, Byrd cannot show prejudice from the ALJ RFC decision. *See Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996)("We will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges"); *Botsay v. Colvin*, 658 F. App'x 715, 718 (5th Cir. 2016) (a mistake in an ALJ's decision does not automatically render the entire decision unsupported by substantial

evidence; a claimant must show that the ALJ's disability determination would have been different if the ALJ had not made the mistake (internal citations omitted)).

**1.B. Credibility Determination.**

When a claimant alleges symptoms, such as pain, limiting her ability to work, she must establish a medically determinable impairment capable of producing the pain or other symptoms. *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995) (citing 20 C.F.R. §404.1529). Once such a medical impairment is established, the subjective complaints must be considered along with the medical evidence in determining the individual's work capacity. The regulations instruct that a claimant's statements about the intensity, persistence, or functionally limiting effects of the symptoms must not be rejected "solely because the available objective medical evidence does not substantiate [those] statements." 20 C.F.R. §404.1529(c)(2); 20 C.F.R. §416.929(c)(2). When such statements are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record. SSR 96-7p, 1996 WL 374186 at *3.[3] An ALJ's credibility findings on a claimant's subjective complaints are entitled to deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

As noted above, the ALJ found Byrd's statements regarding her limitations to be not entirely credible. The ALJ noted that Byrd's statements cannot be objectively verified, and "even if the claimant's daily activities are truly limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the medical evidence and other factors discussed in this decision." Dkt. 8-3 at 23. The other factors

---

[3] SSR 96-7p has been superseded by SSR 16-3p for cases decided on or after March 28, 2016. For decisions such as this one, decided prior to that date, the court uses the ruling in effect at the time of the decision. SSR 16-3P, 2017 WL 5180304 at *n.27.

the ALJ cited included that Byrd received routine and conservative treatment, the conclusions of a specialist "were essentially benign," treatment was generally successful in controlling her symptoms, Byrd's testimony regarding her daily activities was inconsistent with representations in her application, and the record does not contain any opinions from treating or examining physicians that Byrd is disabled or that she has work restrictions, and the state agency consultants' opinions do not support her allegations. *Id.* These findings are supported by the record.

Byrd contends that the ALJ was required to take into consideration her stellar work history in making a credibility determination. The record shows that Byrd worked consistently since 1978, with the exception of the years 1990-95, and worked every quarter for 20 straight years prior to her alleged onset of disability. Dkt. 8-6 at 22-23. Byrd's work history may be relevant, but it is not dispositive.

The current social security ruling on credibility determinations, SSR 96-7p, discusses the factors the ALJ should consider in evaluating credibility, "but there is no instruction that every factor must be discussed in detail in the determination." *Giles v. Astrue*, 433 Fed. App'x 241, 249 (5th Cir. 2011) (citing *Clary v. Barnhart,* 214 Fed. Appx. 479 (5th Cir.2007) ("The ALJ is *not* required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility.")); *Dickson v. Colvin*, Civil Action No. 7:14cv095, 2015 WL 12552002 at *14 (S.D. Tex. June 25, 2015). The ALJ was aware of Byrd's work history because she reviewed Byrd's earnings history in order to determine her insured status at the very beginning of her disability analysis. The ALJ stated sufficient reasons for her credibility determination. The court concludes the ALJ did not commit error assessing Byrd's credibility.

## III. Conclusion

The court concludes that the ALJ's decision is supported by substantial evidence and is not based on an error of law. Thus, Byrd's motion is denied, the Commissioner's motion is granted, and the Commissioner's decision denying benefits is affirmed.

Signed at Houston, Texas, on February 5, 2018.

Christina A. Bryan
United States Magistrate Judge